SHANNON JONES AND JENNIFER JONES, INDIVIDUALLY AND ON BEHALF OF THEIR DAUGHTER, HALEY JONES

VERSUS

ABC INSURANCE COMPANY AND COBE CARDIOVASCULAR, INC., ET AL

C/W

HON. JOHN W. GREENE (RET.), AS UNDERTUTOR OF AND ON BEHALF OF THE MINOR CHILD, HALEY JONES

VERSUS

GAINSBURGH, BENJAMIN DAVID, MEUNIER & WARSHAUER, L.L.C., GARY B. ROTH, BOXER & GERSON, LLP, EARL KEYES, SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C., ORRILL, CORDELL & BEARY, LLC, VINCENT J. BOOTH AND SCOTT GARDNER

NO. 19-CA-141
C/W
19-CA-142

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 535-525 C/W 707-435, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING


January 29, 2020


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg


**AFFIRMED; MOTION TO**
**DISMISS APPEAL DENIED**
    **HJL**
    **MEJ**
    **RAC**

COUNSEL FOR PLAINTIFF/APPELLANT,
JENNIFER BRUNELLE, INDIVIDUALLY AND ON BEHALF OF HER MINOR
DAUGHTER, HALEY JONES
      Mary G. Knapp

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA PATIENT'S COMPENSATION FUND AND THE LOUISIANA
PATIENT'S COMPENSATION FUND OVERSIGHT BOARD
      Conrad Meyer
      Charles O. Taylor
      Meghan E. Ruckman

**LILJEBERG, J.**

Plaintiff/Appellant, Jennifer Brunelle, seeks review of the trial court's

October 16, 2018 judgment, which denied in part plaintiffs' rule for contempt filed

against defendants/appellees, The Louisiana Patient's Compensation Fund and The

Louisiana Patient's Compensation Fund Oversight Board (collectively referred to

as "the PCF"). Ms. Brunelle also seeks review of provisions contained in the

judgment which she contends established additional requirements for her to obtain

reimbursement for custodial care benefits she provided to her daughter. For the

reasons stated more fully below, we affirm the trial court's October 16, 2018

judgment. We also deny the motion to dismiss appeal filed by the PCF.

## FACTS AND PROCEDURAL HISTORY

This matter involves a medical malpractice and products liability action

brought in 1999 by Shannon Jones and Jennifer Brunelle, individually and on

behalf of their daughter, Haley Gabrielle Jones, for severe brain injuries Haley

sustained during a February 20, 1998 heart surgery. The case entails an extensive

and complicated procedural history. The issues currently before this Court arise

from a judgment entered by the trial court on October 16, 2018, following a

hearing on a rule for contempt filed against the PCF by plaintiffs, Jennifer

Brunelle, individually and as tutor for Haley Jones, and the undertutor for Haley,

Hon. John W. Greene (ret.).[1]

The rule for contempt alleged, *inter alia*, that as of February 27, 2018, the

PCF failed to pay custodial care expenses due to Jennifer Brunelle in the amount of

$250,840.40, dating back to February 4, 2015.[2] Ms. Brunelle alleged that she was

previously awarded coverage for 16 hours a day of custodial care for Haley at a

---

[1] The appeal currently before this Court was only filed by Ms. Brunelle. The undertutor did not join in the motion and order for appeal and did not join in the briefing submitted by Ms. Brunelle to this Court.

[2] In subsequent filings, Ms. Brunelle also alleged that the PCF failed to timely pay for other future medical benefits and equipment, such as a computer, eyeglasses and a service dog, allegedly owed to Haley. The only benefits at issue in this appeal are the custodial care benefits.

rate of $15.00 per hour, or in the alternative, a 10 hour/6 hour split when Haley was in school, with a reduced rate of $7.43 for the school hours. Ms. Brunelle further alleged that she provided the PCF adjustor with time sheets in accordance with the PCF's administrative rules. However, she claimed that the PCF refused to reimburse her for the custodial care expenses. The rule for contempt also sought legal interest, court costs and attorney fees due to the PCF's failure to pay the amounts due within 30 days after submission of her claim for payment of the benefits.

The PCF's obligation to pay the custodial care benefits arose from a judgment entered by the trial court on April 4, 2016. This judgment contained both the terms of a consent judgment entered into between plaintiffs and the PCF, as well as the trial court's determination, following a trial held on March 10, 2016, regarding the hourly rate of reimbursement Ms. Brunelle would receive for custodial care provided to Haley.

The relevant portions of the April 4, 2016 judgment containing the provisions consented to by the parties provide as follows:

Based on the consent of the parties;

> **IT IS ORDERED, ADJUDGED AND DECREED** that the LCPF has, pursuant to *La. R.S. 40:1231.1 et seq.*, accepted total responsibility for the actions of the perfusionist at Ochsner Hospital who caused the injuries and damages to Haley Gabrielle Jones, a minor, on February 17, 1998, which includes stipulating to liability, cause and damages, including future medical damages as defined by *La. R.S. 40:1231.3.*
>
> *   *   *
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the PCF will provide coverage for sixteen (16) hours a day of custodial care provided by a family member or, in the alternative, when Haley is in school, a ten (10) hour/six (6) hour split, meaning ten (10) hours at the full hourly rate and six (6) hours at a reduced hourly rate.

The portion of the April 4, 2016 judgment entered by the trial court following the trial held on March 10, 2016, provides as follows:[3]

> After consideration of the pleadings, the memoranda, the law, the arguments of counsel, and the evidence presented at trial;
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court determines that the hourly rate of reimbursement for sixteen (16) hours a day of custodial care provided by a family member to Haley shall be $15.00 per hour. When Haley is in school, a ten (10) hour/six (6) hour split will apply, as the parties have agreed, and the reduced hourly rate applicable to the six (6) hours Haley is in school shall be $7.43. The Court notes that the parties have argued for various hourly rates in this matter, with the PCF arguing that its uniform rate of reimbursement of $7.43 should apply and the Undertutor arguing that various rates in excess of that amount, with a suggested minimum of $18.00, be applied. The Court believes that a full hourly rate of $15.00 is an appropriate amount of reimbursement for Mrs. Brunelle, especially considering the multitude and extent of services and related benefits she provides to Haley. Although the Undertutor argues that Mrs. Brunelle should be reimbursed separately for case management and other services rendered to Haley, the Court believes that the reimbursement for custodial care sufficiently covers those services.

The PCF argued in opposition that Ms. Brunelle could not meet her burden of proof to establish contempt. The PCF argued that the rules and regulations set forth in the Louisiana Administrative Code govern the payment process and required Ms. Brunelle to provide a detailed statement regarding the custodial care services provided to Haley. Louisiana Administrative Code, Tit. 37, Pt. III, §1917(A)(4), provides, in pertinent part, that "[a]ll claims for nursing or sitter care payments, including those for family members providing such care, must include a signed, detailed statement by the person rendering nursing or sitter care, setting forth the date, time and *type of care* rendered to and for the patient." [Emphasis added.] The PCF argued that Ms. Brunelle's time sheets failed to include any information regarding the type of care she provided to Haley on a daily basis and

---

[3] The record before this Court does not contain the transcript or evidence from the March 10, 2016 trial.

therefore, due to the failure to comply with this requirement, the PCF could not be held in contempt.

Plaintiffs argued in reply that the administrative rule cited above did not apply to the claims Ms. Brunelle submitted to the PCF because the April 4, 2016 judgment did not require compliance with this rule in order to receive payment. Plaintiffs further argued that the administrative rule only applied to situations where the PCF, as opposed to the trial court, determined the appropriate rate to pay a claimant for custodial care. Plaintiffs noted that prior to rendering the April 4, 2016 judgment, the trial court conducted a trial where it heard testimony and reviewed exhibits regarding the services Ms. Brunelle provided to Haley and based on that evidence, determined the rate she would be paid for those services. Therefore, plaintiffs argued that no valid reason existed for requiring Ms. Brunelle to provide an explanation of the services she provided to Haley on a daily basis, other than to harass Ms. Brunelle and delay payment.

On August 24, 2018, plaintiffs filed an additional memorandum in support of the rule for contempt asking the trial court to enforce the April 4, 2016 judgment for the same reasons previously stated. Plaintiffs also asked the trial court to clarify the April 4, 2016 judgment by providing an order stating that Ms. Brunelle "***only*** be required to submit biweekly time sheets with ***the date and the number of hours, if any, Haley was in school.***"

The trial court held a hearing on the rule for contempt on September 10, 2018. At the beginning of the hearing the trial court held a bench conference with counsel, which was not transcribed. After completing the bench conference, the trial court did not conduct a full evidentiary hearing on plaintiffs' rule for contempt. Rather, the trial court stated that it needed to provide clarifications in order to address several issues that had arisen regarding the execution of the April 4, 2016 judgment. The trial court then proceeded to provide its understanding of

the parties' positions regarding the failure to pay the custodial care benefits. The

trial court stated that the time sheets submitted by Ms. Brunelle did not include any

indication regarding the type of care rendered or provided to Haley and further

noted that the PCF claimed this information was necessary pursuant to

§1917(A)(4) of the La. Admin. Code, Tit. 37, Pt. III., in order to honor the

payment requests. The trial court then recognized that the PCF was willing to

accept a "generic" or "blanket" statement regarding the services Ms. Brunelle

provided to Haley on a daily basis, and that the same statement could be copied

from day-to-day, unless there was a significant material change or deviation in the

services she was providing to Haley. The transcript indicates that the trial court

accepted the PCF's proposal regarding the daily statement of services as a

requirement for Ms. Brunelle to obtain payment for the custodial care services.

The trial court then shifted the discussion to the plaintiffs' concerns

regarding the tax consequences Ms. Brunelle would incur if the PCF paid all past

due amounts in a single payment. During this discussion, the trial court indicated

that Ms. Brunelle would also have to amend the previously submitted time sheets

to include a statement of the services provided:

THE COURT:

Ms. Knapp, you have - -

* * *

THE COURT:

-- indicated that -- that because of the amount of money that is
owed, when these time sheets are updated with that statement that is
going to be copied on those various entries, that you don't want all
that money at one point because of the tax consequences to Ms.
Brunelle.

The PCF's counsel responded that he would confer with his client, and

indicated the PCF could "work something out" if ordered to do so by the trial

court. Ms. Brunelle's counsel then requested interest on the past due payments

and the trial court indicated that it would not order the PCF to pay interest because the time sheets were not "properly submitted." During this discussion, the trial court again indicated that the previously submitted time sheets would need to be updated with a statement of the services provided:

THE COURT:

Until [the time sheets] are updated with the statement of the services provide (sic) or the treatment rendered, so I don't know if it would be appropriate to charge the PCF interest until those - - those time sheets are - - are submitted with the appropriate details.

Ms. Brunelle's counsel finally requested that the trial court award her client $30,000.00 for attorney's fees incurred as a result of the difficulties and delays caused by the PCF with respect to the payment of custodial care benefits. Counsel disagreed that the law and the prior judgment entered by the trial court required Ms. Brunelle to submit a statement of the services. However, she noted that the trial court "has given us certain guidance today which is important and easy to follow," and noted that she understood the trial court "wanting us to add another paragraph" to the judgment regarding this guidance. However, she argued that this was not a sufficient reason for the PCF to withhold all payments of the custodial care benefits, and further argued that the PCF should have made a partial tender while the parties attempted to resolve their disputes. The trial court stated that it did not find the PCF acted unreasonably and declined the request for attorney's fees.

The trial court then ordered the PCF to submit a written judgment. In summation, the trial court stated as follows with respect to the custodial care payments:

THE COURT:

As far as the judgment goes, I - - I think with regard to the forms that are submitted by Ms. Brunelle, again, it has to be an indication of the type of service to be provided or that was provided as required by the administrative rules so I don't think that's

19-CA-141 C/W 19-CA-142                    6

unreasonable. Again, as far as I'm concern (sic), that can be the same paragraph for each day until there is a significant change in the type of service to be provided or that was provided.

*  *  *

It is certainly not my intention that Haley has to fight for everything that she needs to get throughout the process that the PCF is going to be managing this, but at the same time, I think the PCF is entitled to have some sort of documentation supporting these pay outs. So in that regard, that's the way I would expect this to proceed in the future.

The record indicates that the parties each submitted their own version of the judgment from the September 10, 2018 hearing for the trial court's signature. Ms. Brunelle's version of the judgment provided for the payment of the time sheets submitted up to the date of the September 10, 2018 hearing in two installments to be paid in January 2019 and January 2020, with no requirement for any statement of services to be provided by Ms. Brunelle for these past time sheets. The proposed judgment further provided that from September 10, 2018 forward, Ms. Brunelle would provide time sheets that included a description of the types of services provided to Haley.

On October 16, 2018, the trial court signed the alternative proposed judgment submitted by the PCF, which ordered as follows:

> **IT IS ORDERED, ADJUDGED AND DECREED** that pursuant to LA. R.S. 40:1231.1 et seq. the LPCF shall pay petitioner, Jennifer Brunelle, all of the amounts of custodial care owed from February 4, 2015, to the present, for providing custodial care to Haley Jones upon completion of the submission of timesheets pursuant to provisions of LA. R.S. 40:1231.3 related to "Future Medical Care and Related Benefits" and the provisions related to payment for "Nursing Care; Sitter Care" outlined in 37 LA ADC Pt. III, §1917;
>
> **IT IS ORDERED, ADJUDGED AND DECREED** that Jennifer Brunelle or whomever is rendering the custodial care for Haley Jones shall submit such documentation, including timesheets, for payment of the custodial care pursuant to the provisions of LA R.S. 40:1231.1 et. seq., the provisions of LA R.S. 40:1231.3 related to "Future Medical Care and Related Benefits" and the provisions related to payment for "Nursing Care; Sitter Care" outlined in 37 LA ADC Pt. III, §1917, and pursuant to the terms of the Judgment dated

March 10, 2016,[4] with said timesheets to include a description of the types of services provided to Haley Jones on each of the days included in the timesheet, with the LPCF allowing Mrs. Brunelle to copy the same statements from day-to-day unless there is some significant material deviation in the type of care and/or services provided, wherein Mrs. Brunelle is required to document the deviation.

Ms. Brunelle filed a timely motion for devolutive appeal on December 11, 2018, which the trial court granted on December 17, 2018. On May 24, 2019, the PCF filed a motion to dismiss the appeal for lack of jurisdiction, which was referred to this panel to consider with the merits of the appeal.

## DISCUSSION

On appeal, Ms. Brunelle raises several assignments of error with respect to the October 16, 2018 judgment rendered by the trial court. She first argues that the trial court erred by failing to find the PCF in contempt of its obligations to pay custodial care benefits as set forth in the April 4, 2016 judgment and by failing to award her interest and attorney's fees for the PCF's failure to pay these benefits in a timely manner. Ms. Brunelle next argues that the trial court exceeded its authority by granting relief in favor of the PCF – that is requiring her to include a statement of the services she provided to Haley on her daily time sheets – in response to her rule for contempt against the PCF. She contends the requirements set forth in the administrative rule governing nursing and sitter care was not included as part of the April 4, 2016 judgment. Finally, Ms. Brunelle argues that the October 16, 2018 judgment signed by the trial court is not in conformity with the trial court's rulings during the September 10, 2018 hearing.

*Jurisdiction*

Before we consider the merits of Ms. Brunelle's appeal, we must first address the PCF's motion to dismiss the appeal for lack of jurisdiction. The PCF

---

[4] As noted above, the trial court held the trial to determine the hourly rate it would award Ms. Brunelle for custodial care benefits on March 10, 2016, and took the issue under submission. It entered the written judgment on this issue, as well as the consent provisions agreed to by the parties, on April 4, 2016.

contends that Ms. Brunelle is seeking review of the trial court's judgment denying her rule for contempt, which is interlocutory in nature and not immediately appealable. *See Sullivan v. Malta Park*, 16-875 (La. App. 4 Cir. 1/31/17), 215 So.3d 705, 708.

Ms. Brunelle argues in response that she does not simply seek review of the denial of the rule for contempt, but also appeals the provisions the trial court added to the October 16, 2018 judgment regarding the statement of services she must provide with her time sheets. She argues that, though her rule for contempt was set on September 10, 2018, an actual contempt trial did not ensue. She contends the hearing focused primarily on establishing the obligations she would have to satisfy before the PCF would pay her custodial care benefits. She contends these additional provisions substantively amended her obligations under the April 4, 2016 judgment and was a determination on the merits that constitutes an appealable judgment. Ms. Brunelle further argues that these amendments were unwarranted and exceeded the trial court's authority because the only matter pending at the September 10, 2018 hearing was the rule for contempt seeking an order to compel the PCF to pay the past due custodial care benefits and award attorney's fees and costs.

The PCF responds by arguing that the October 16, 2018 judgment did not change or alter the contents of the April 4, 2016 judgment, because this judgment required the PCF to comply with the applicable provisions of the Louisiana Medical Malpractice Act, La. R.S. 40:1231.1, *et. seq*. ("LMMA"), when processing reimbursements for custodial care.

Appeals are favored in law, must be maintained whenever possible, and will not be dismissed for mere technicalities. *9029 Jefferson Highway, LLC v. S & D Roofing, LLC*, 15-686 (La. App. 5 Cir. 2/24/16), 187 So.3d 522, 524. Any doubt concerning the validity of an appeal should be resolved in favor of the appellant to

the end that an appeal can be sustained. *Id.* Unless the grounds for dismissal are free from doubt, the appeal should be maintained. *Morice v. Alan Yedor Roofing and Construction*, 16-532 (La. App. 5 Cir. 2/8/17), 216 So.3d 1072, 1079.

Although an interlocutory judgment is generally not appealable, an interlocutory judgment is subject to review on appeal when an appealable judgment has been rendered in the case. *Ellefson v. Ellefson*, 616 So.2d 221, 224 (La. App. 5th Cir. 1993), *writ denied*, 617 So.2d 1183 (La. 1993). When an unrestricted appeal is taken from a final judgment, the appellant is entitled to a review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the correctness of the final judgment from which the party has taken the appeal. *Sellers v. El Paso Indus. Energy, L.P.*, 08-403 (La. App. 5 Cir. 2/10/09), 8 So.3d 723, 731.

In its reply in support of its motion to dismiss, the PCF cites to *Rathman v. Emerald Forest, LP*, 14-64 (La. App. 1 Cir. 11/7/14), 2014 WL 5800458 (unpublished opinion), to counter Ms. Brunelle's argument that the October 16, 2018 judgment expanded the provisions of the April 4, 2016 judgment. In *Rathman*, the parties entered into a consent judgment whereby the defendant condominium association, Emerald Forest, agreed to complete certain repairs to the plaintiff's condominium by using the services of a specific third party contractor, Western Weatherproofing, named in the judgment. For reasons not fully explained in the opinion, Western Weatherproofing was not able to provide the required services and the plaintiff filed a rule for contempt against Emerald Forest. Following a hearing on the contempt rule, the trial court entered an order allowing Emerald Forest 90 days to engage a new contractor. Emerald Forest appealed the ruling and the appellate court dismissed the appeal finding that the trial court's decision to allow additional time to engage a new contractor was not a substantive amendment to the prior judgment.

We find the present matter to be factually distinguishable from *Rathman* as the provisions added by the trial court in the present matter add new details regarding the information Ms. Brunelle must provide in order to comply with the applicable administrative rule. Furthermore, contrary to the PCF's argument, the April 6, 2016 judgment does not contain any language regarding the procedures and requirements for custodial care reimbursements. The only references to the LMMA in the April 6, 2016 judgment are general citations contained in the first paragraph of the judgment quoted above.

It is apparent from the plain language of the October 16, 2018 judgment that the trial court did not simply deny plaintiffs' rule for contempt and request for attorney's fees and costs. The trial court's October 16, 2018 judgment added provisions which confirmed the application of the requirements of La. Admin. Code, Tit. 37, Pt. III, § 1917 to Ms. Brunelle's claims for custodial care payments. The judgment also implemented the concession offered by the PCF during the hearing to allow Ms. Brunelle to comply with Section 1917 by using the same statement of services from day-to-day unless there is a significant material deviation in the custodial care provided.

The parties do not dispute that the April 4, 2016 was a final judgment that resolved all claims existing between plaintiffs and the PCF. We find that we have jurisdiction to review Ms. Brunelle's appeal of the merits of these additional substantive provisions which the trial court added to clarify and implement the final judgment previously entered between the parties. Because the denial of the rule for contempt is raised in connection with the appeal of a final judgment, this Court has jurisdiction to consider all issues addressed in the October 16, 2018 judgment.

Accordingly, we deny the PCF's motion to dismiss Ms. Brunelle's appeal for lack of jurisdiction.

*Rule for Contempt*

On appeal, Ms. Brunelle first argues that the trial court erred in denying the rule for contempt and failing to award attorney's fees and interest against the PCF. She contends that pursuant to the terms of April 4, 2016 judgment, the only information she is required to provide to the PCF in order to obtain payment for the custodial care she provides to Haley each day is whether or not Haley was in school that day, and if so, the hours she was in school. She further claims that if the PCF wanted to require compliance with the provisions of La. Admin. Code, Tit. 37, Pt. III, § 1917 before paying her for the custodial care, the PCF should have included this provision in the consent agreement. Ms. Brunelle argues that information regarding the care she provides to Haley each day is unnecessary as it has no bearing on her rate of compensation set by the trial court and further notes that she receives the same amount of reimbursement regardless of the services she provides to Haley. She contends the PCF concocted these requirements to harass her and unjustly delay payment.

The PCF argues in response that the trial court properly denied the rule for contempt based on its recognition that the time sheets submitted by Ms. Brunelle were insufficient due to their failure to comply with La. Admin. Code, Tit. 37, Pt. III, § 1917(A)(4), which requires a signed detailed statement by the person rendering care, setting forth the date, time and type of care rendered to and for the patient.

We do not find that the trial court erred by refusing to hold the PCF in contempt of court for refusing to pay the custodial care benefits awarded in the April 4, 2016 judgment. While the April 4, 2016 judgment does not provide specifics regarding the submission or payment of claims for custodial care or any other benefits addressed in the judgment, it also does not exclude the application of any provision of the LMMA or the corresponding administrative rules governing

the PCF's administration and payment of future medical benefits awarded on behalf of Haley Jones.

La. R.S. 40:1231.3(C) provides that, with respect to a plaintiff found to be in need of future medical care, once a judgment is entered in favor of a plaintiff or a settlement is reached between a plaintiff and the PCF, the plaintiff may submit claims to the PCF for all future medical care and related benefits. *See also* La. Admin. Code, Tit. 37, Pt. III, § 1907(A). La. Admin. Code, Tit. 37, Pt. III, § 1901(A) explains how the administrative rules provide for and govern the administration and payment of future medical benefits:

> The rules of Chapter 19 provide for and govern the administration and payment by the fund of future medical care and related benefits for patients deemed to be in need of future care and related benefits pursuant to a final judgment issued by a court of competent jurisdiction or agreed to in a settlement reached between a patient and the fund.

A future medical care award is not a lump sum award payable immediately to a plaintiff, but rather will be paid out by the PCF, pursuant to the provisions of La. R.S. 40:1231.3, as expenses are incurred. *Watkins v. Lake Charles Memorial Hosp.*, 13-1137 (La. 3/25/14), 144 So.3d 944, 951. Future medical expenses are not made executory until review and approval by the PCF. *Id.* A medical provider or family member rendering medical care or providing related benefits must submit a claim to the PCF for payment. *Id; Bijou v. Alton Ochsner Medical Foundation*, 95-3074 (La. 9/5/96), 679 So.2d 893, 898.

Notwithstanding, the trial court issuing the final judgment retains continuing jurisdiction in cases where future medical care and related benefits are determined to be needed by the patient. La. R.S. 40:1231.3(E)(1);[5] *Watkins*, 144 So.3d at 951. If the trial court finds the PCF unreasonably failed to pay for future medical care

---

[5] La. R.S. 1231.3(E)(1) provides: "The district court from which final judgment issues shall have continuing jurisdiction in cases where medical and related benefits are determined to be needed by the patient."

within thirty days after submission of a claim for payment of such benefits, the court must award reasonable attorney fees to the claimant's attorney. La. R.S. 40:1231.3(E)(2).[6]

As noted above, the dispute between the parties is whether Ms. Brunelle must provide a signed statement of the services she provides to Haley each day in accordance with La. Admin. Code, Tit. 37, Pt. III, §1917(A)(4). Section 1917 provides in its entirety as follows:

> A. The fund will provide and/or fund, at the lesser of the billed amount or the maximum amount allowed under the reimbursement schedule, inpatient or outpatient nursing or sitter care when such care is required to provide reasonable medical, surgical, hospitalization, physical rehabilitation, or custodial services made necessary by the health care provider's malpractice, subject to the following limitations.
>
> 1. All nursing or sitter care shall be specifically prescribed or ordered by a patient's treating health care provider.
>
> 2. All nursing or sitter care shall be rendered by a licensed and/or qualified registered nurse or licensed practical nurse or by a sitter, a member of the patient's family or household, or other person as specifically approved by the fund.
>
> 3. There shall be a presumption that the person rendering nursing or sitter care is qualified if the treating health care provider issues a statement that that person is competent and qualified to render the nursing or sitter care required by the patient.
>
> 4. ***All claims for nursing or sitter care payments, including those for family members providing such care, must include a signed, detailed statement by the person rendering nursing or sitter care, setting forth the date, time, and type of care rendered to and for the patient.***
>
> B. 1. Providers of nursing or sitter care shall be funded, at the lesser of the billed amount or the maximum amount allowed under the reimbursement schedule. If the reimbursement schedule contains no applicable rate for such care, then the care shall be funded at the lesser of the billed amount or the usual and customary rate charged by similarly licensed or qualified healthcare providers in a patient's home state, city, or town. However, nursing or sitter care provided by members of the patient's family or household will be funded at a rate not to be less than the federal minimum hourly wage rate as may be

---

[6] La. R.S. 1231.3(E)(2) provides: "The court shall award reasonable attorney fees to the claimant's attorney if the court finds that the patient's compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits."

revised from time to time regardless of the licensure or qualification of the provider.

2. However, notwithstanding the foregoing, future nursing or sitter care provided by members of the patient's family or household will be funded at a rate not to exceed the equivalent of $6 per hour plus inflation at the annual consumer price index published by the United States Bureau of Labor Statistics for each year beginning in November 2001. However, at no time will the hourly rate paid be below the federal minimum hourly wage rate as may be revised from time to time.

C. The fund shall be entitled to periodic inspections or assessments of the physical environment in which the nursing or sitter care is being rendered. The fund may seek a judicial ruling to discontinue the payments for future medical care and related benefits if, upon inspection and recommendation of a licensed or qualified health care provider, it is determined that the physical environment in which the nursing or sitter care being rendered is inadequate or inappropriate and not in the best interest of the patient.

D. The fund may seek a judicial ruling to discontinue the payments for future medical care and related benefits if, upon a physical or mental examination of the patient, pursuant to § 1911, and recommendation of a licensed or qualified health care provider, it is determined that the nursing or sitter care being rendered is inadequate or inappropriate and not in the best interest of the patient.

[Emphasis added.]

Ms. Brunelle argues that, when considered in its entirety, one must conclude that La. Admin. Code, Tit. 37, Pt. III, §1917 only applies to cases where neither the custodial care provider nor the amount of reimbursement has been previously determined by the trial court. She claims that the detailed statement of the care is only relevant to the determination of the amount the fund will pay for nursing or sitter care. Therefore, she contends this information is unnecessary when the trial court sets the rate.

However, our review of La. Admin. Code, Tit. 37, Pt. III, §1917 indicates that Ms. Brunelle's reasoning is faulty. Section 1917(B)(2) quoted above establishes the permitted rates for nursing or sitter care provided by a family member when the PCF determines the rate of pay. According to the parties that

amount is currently $7.43.  Therefore, contrary to Ms. Brunelle's argument, the PCF's discretion regarding the rate awarded to a family member is limited and the statement of the care and services was obviously intended to assist the PCF with more than setting the rate of reimbursement.  One could foresee, however, that a detailed statement of the custodial care provided to a patient would be relevant to assist the PCF in determining whether it should request an inspection or assessment of the patient's environment in accordance with Section 1917(C) quoted above, or in determining whether the nursing or sitter care being provided to the patient is inadequate, inappropriate or not in the best interest of the patient in accordance with both Sections 1917(C) and (D).

In further support of her argument that she is not required to provide a statement of services, Ms. Brunelle cites to the Third Circuit's decision in *Watkins v. Barry*, 06-858 (La. App. 3 Cir. 12/6/06), 946 So.2d 262, *writ denied*, 07-373 (La. 4/27/07), 955 So.2d 686, which affirmed a trial court's decision to require the PCF to pay prospective custodial care payments.  The son of the plaintiff, Tina Watkins, suffered a stroke *in utero* causing serious and permanent debilitating injuries.  Following a bench trial, the trial court awarded future medical and custodial care expenses, which were itemized and quantified in accordance with La. R.S. 40:1299.43(A)(2),[7] at over $6,000,000.00.  This amount included custodial care for Ms. Watkins' son for 12 hours a day until his eighteenth birthday and twenty-four hours a day thereafter for the remainder of his life.[8]

---

[7] La. R.S. 40:1299.43(A)(2) was redesignated in 2015 as La. R.S. 40:1231.3(A)(2), which provided then and now as follows: "In actions upon malpractice claims tried by the court, the court's finding shall include a recitation that the patient is or is not in need of future medical care and related benefits that will be incurred after the date of the court's finding and the amount thereof."

[8] In an earlier decision affirming this award, *Watkins v. Lake Charles Mem'l Hosp.*, 04-355 (La. App. 3 Cir.12/15/04), 896 So.2d 130, *writ denied*, 05-145 (La. 4/9/05), 898 So.2d 1270, the opinion noted that the trial court awarded a rate of $7.50 per hour for the custodial care provided until Ms. Watkins' son was 18 and $10 per hour for live-in support commencing at age 18.

After the judgment became final, Ms. Watkins made a demand for payment and the PCF paid general damages and accrued medical and custodial care expenses incurred through the date of the trial. Ms. Watkins then demanded payments of expenses incurred since trial and the PCF notified Ms. Watkins that she would have to provide a signed W-9 taxpayer identification form and notes reflecting the hours worked and duties performed by the custodial care provider. Ms. Watkins provided the W-9 form and an affidavit explaining her son's disabilities had not diminished since trial. However, she argued that a record of the hours and duties performed by the custodial care provider was not required.

After the PCF declined to pay the custodial care benefits, Ms. Watkins filed a rule alleging the PCF arbitrarily refused to pay. The trial court ruled in favor of Ms. Watkins and ordered the PCF to make quarterly advance payments of custodial care expenses to a special needs trust at the hourly rate specified in the judgment. The payment was conditioned upon the PCF's receipt of a certification that the child's condition remained unchanged in the thirty days prior to the quarterly payment.

The PCF appealed arguing that the trial court erred in requiring the PCF to make prospective payments and erred by not requiring the plaintiff to submit any evidence that the services were rendered. In affirming the trial court's judgment, the appellate court stated that "[b]y requiring the plaintiff to submit verification of custodial care expenses, the PCF ignores the mandate of the 2003 judgment" and further noted that the "judgment established both the need and amount of future expenses." *Id.* at 264. The appellate court recognized that the judgment was not made executory until a claim was submitted to the PCF, but reasoned that the trial court had jurisdiction to fashion an appropriate remedy and in administering the claim, the PCF did not have the authority to alter the terms of the judgment. *Id.*

Ms. Brunelle argues that the *Watkins v. Barry* court concluded that because the judgment established the *need* and *amount* of the future expenses, the PCF was attempting to improperly alter the terms of the judgment by requiring evidence of the hours worked and duties performed by the custodial care provider before rendering payment. Ms. Brunelle asks this Court to follow *Watkins v. Barry*, and also determine that because the April 4, 2016 judgment established the need and amount of custodial care benefits, the PCF could not require her to provide information regarding the services she provided to Haley.

We do not find the appellate court's reasoning in *Watkins v. Barry* to be persuasive with respect to the present matter. First, we do not agree that the determinations regarding the need and amount of custodial care services in the April 4, 2016 judgment precluded the PCF from requiring a statement of services in accordance with its administrative rules prior to payment. When future medical care and related benefits are awarded by a trial court on a malpractice claim, La. R.S. 40:1231.3(A)(2) requires that "the court's finding shall include a recitation that the patient is or is not in *need* of future medical care and related benefits . . ." and "the *amount* thereof." [Emphasis added.] Therefore, every judgment awarding future medical benefits must address these two issues. More importantly, the *Watkins v. Barry* court did not mention or analyze whether the provisions of La. Admin. Code, Tit. 37, Pt. III, §1917 applied to the judgment. Accordingly, for these reasons and those discussed above in our analysis of the applicable law, we decline to apply the reasoning set forth in *Watkins v. Barry, supra*, to the present matter.

Ms. Brunelle also argues that in a subsequent opinion rendered by the Louisiana Supreme Court over seven years later in a related decision, *Watkins v. Lake Charles Memorial*, 13-1137 (La. 3/25/14), 144 So.3d 944, the Supreme Court affirmed the award compelling the PCF to pay prospective benefits. Ms. Brunelle

argues that if the Supreme Court affirmed an award of prospective payments, then it is unreasonable to order her to submit a statement of services in order to obtain payment.

In *Watkins v. Lake Charles*, *supra*, the PCF ceased the prospective payments for 24-hour custodial care to Ms. Watkins after a PCF employee noticed on social media that Ms. Watkins' son was married and no longer living with her. Ms. Watkins filed a motion to compel the PCF to continue payments. The trial court reduced the custodial care from 24 hours to 6 hours, but awarded Ms. Watkins the 24-hour care that accrued prior to the hearing, as well as attorney's fees and costs. The appellate court affirmed and the Supreme Court granted a writ of certiorari. *Id.*

We first note that the Supreme Court in *Watkins v. Lake Charles,* did not actually affirm the judgment awarding the prospective payments entered by the trial court in 2006. *Id.* at 962. Rather, the primary issue was whether the PCF could discontinue the prospective custodial care payments to Ms. Watkins according to its jurisdiction to consider claims under La. R.S. 40:1299.43(C) (redesignated as La. R.S. 40:1231.3(C)), or whether it was required to continue to comply with the judgment until it obtained a ruling from the trial court allowing it to cease the prospective payments. The Supreme Court affirmed the rulings of the trial and appellate courts, finding that once the trial court exercised its continuing jurisdiction under La. R.S. 40:1299.43(E) (redesignated as La. R.S. 40:1231.3(E)(1)), the PCF was obliged to continue to comply with the trial court's judgment until it was modified or recalled by the trial court. *Id.* at 956. The Louisiana Supreme Court did not address the applicability of La. Admin. Code, Tit. 37, Pt. III, § 1917, as this was not an issue before the court.

We agree that a trial court has authority to fashion appropriate remedies to ensure payment of necessary future medical care and related benefits, and that the

PCF must follow such a trial court judgment until it obtains a ruling for the trial court otherwise. In the instant matter, the parties agreed to 16 hours of coverage per day for custodial care and the trial court awarded a rate of $15.00 per hour and a reduced rate of $7.43 when Haley is in school. However, the April 4, 2016 judgment did not include any specific provisions or guidelines regarding the administration and payment of the custodial care claims. Therefore, considering the applicable laws and rules discussed above, we find that the PCF correctly applied La. Admin. Code, Tit. 37, Pt. III, § 1917(A)(4), and required Ms. Brunelle to properly document her claims for custodial care benefits in accordance with this provision prior to payment.

We do not find it unreasonable for Ms. Brunelle to provide a description of the services on her time sheets in order to certify to the PCF that she is providing those services contemplated by the trial court. The April 4, 2016 judgment specifically indicated that the trial court awarded an amount above the set administrative rate requested by the PCF due to numerous services Ms. Brunelle provides to her daughter. If Ms. Brunelle's time sheets indicate she is providing a reduced or different level of services, this information could be relevant to the PCF to determine whether to return to the trial court to seek a reduced rate or to seek discontinuation of payments.

Accordingly, we do not find the trial court erred by denying plaintiffs' rule for contempt and by declining their request for attorney's fees and interest.

*Did Trial Court Exceed Its Authority by Specifying the Information*
*Ms. Brunelle Must Provide Regarding the Custodial Care Services?*

In her next assignment of error, Ms. Brunelle argues the trial court exceeded its authority by adding provisions requiring her compliance with La. Admin. Code, Tit. 37, Pt. III, § 1917, when this issue was not procedurally before the trial court. She contends the PCF did not file any rules to modify the April 4, 2016 judgment

and that the only matter pending before the trial court at the September 10, 2018 hearing was the rule for contempt. She argues that if the PCF wished to require time sheets with details regarding the services provided, then it was obligated to file its own rule to modify the April 4, 2016 judgment.

We disagree that the trial court exceeded its authority because plaintiffs invited the trial court to provide guidance regarding the information Ms. Brunelle must provide to the PCF regarding custodial care. As noted above, in the August 24, 2018 memorandum in support of the rule for contempt, plaintiffs requested and invited clarification from the trial court regarding the information Ms. Brunelle was required to provide to the PCF in order to receive custodial care payments. Furthermore, plaintiffs' counsel did not object to the trial court providing additional guidance during the September 10, 2018 hearing on the rule for contempt. Counsel noted that the trial court "has given us certain guidance today which is important and easy to follow," and noted that she understood the trial court "wanting us to add another paragraph" to the judgment regarding this guidance.

Obviously, Ms. Brunelle does not agree with the guidance provided by the trial court. However, after reviewing the pleadings submitted by the parties and the transcript from the hearing on the rule for contempt, we do not find that the trial court exceeded its authority by adding the provisions regarding the statements Ms. Brunelle must provide to the PCF to receive custodial care payments.

*Did the October 16, 2018 Judgment Conform With the Transcript?*

Ms. Brunelle also argues that the trial court exceeded its authority by issuing a judgment that does not conform to the transcript. Ms. Brunelle does not point to any specific provisions of the April 4, 2016 judgment that are not in compliance with the transcript. However, she does note that she submitted a proposed

judgment to the trial court, which she contends correctly set forth the trial court's rulings evidenced by the transcript.

As explained above, Ms. Brunelle submitted an alternative judgment that provided for the payment of the accrued custodial care benefits in two installments and further provided that the requirement to provide the statement of services would only apply prospectively from the date of the September 10, 2018 hearing. However, the trial court did not order the past custodial care benefits to be paid in two installments. Rather, the trial court instructed the PCF's counsel to work with plaintiffs' counsel to resolve this issue. In addition, as quoted above, the trial court stated on two different occasions during the hearing that Ms. Brunelle would need to update the invoices previously submitted to the PCF for payment with a statement of the services provided.

Accordingly, we find that Ms. Brunelle assignment of error on this issue is without merit.

**DECREE**

Based on the foregoing, we affirm the trial court's October 16, 2018 judgment and deny the PCF's Motion to Dismiss Appeal.

**AFFIRMED; MOTION TO DISMISS APPEAL DENIED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JANUARY 29, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-CA-141
### C/W 19-CA-142

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
CONRAD MEYER (APPELLEE)
BRITTNEY ANKERSEN (APPELLEE)

ADRIANNE L. BAUMGARTNER
(APPELLEE)
CHARLES O. TAYLOR (APPELLEE)

MEGHAN E. RUCKMAN (APPELLEE)

**MAILED**
MARY G. KNAPP (APPELLANT)
ATTORNEY AT LAW
1217 FLORIDA STREET
MANDEVILLE, LA 70448

KAYE N. COURINGTON (APPELLEE)
ATTORNEY AT LAW
616 GIROD STREET
NEW ORLEANS, LA 70130

SARAH H. CHRISTAKIS (APPELLEE)
ATTORNEY AT LAW
ONE GALLERIA BOULEVARD
SUITE 1100
METAIRIE, LA 70001